# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY G. WOLF,

UNPUBLISHED
January 12, 2017

Plaintiff/Counter-Defendant-
Appellee,

v

No. 328335
Oakland Circuit Court
LC No. 2013-811992-DO

MARY B. WOLF,

Defendant/Counter-Plaintiff-
Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right from a judgment of divorce. Defendant argues that the trial court erred by treating property formerly belonging to her mother as part of the marital estate instead of her separate property. She further argues that the trial court erred in its valuation of assets and its division of the marital estate, as well as by declining to award her attorney fees. Because we disagree with defendant's arguments, we affirm the trial court's judgment.

The parties were married for almost 30 years. Both parties are employed by the federal government. Defendant works for the Internal Revenue Service and plaintiff works for the Food and Drug Administration. Each party has substantial retirement benefits. The parties' marital home was located in West Bloomfield, Michigan. Plaintiff had begun to remodel the home by adding an addition, but that work was never completed. After the parties separated, defendant continued to live in the marital home and plaintiff began residing in a lake cottage at 6853 Forestlawn Court in Waterford, which the parties had purchased during the marriage.

While the parties were still together, funds belonging to defendant's mother, Louise Lynch, were transferred into the parties' joint bank accounts, and some of that money was used to purchase two additional properties in Waterford, at 6828 Forestlawn Court and 6863 Forestlawn Court. The parties intended to refurbish those properties as rental properties, to generate income to cover Lynch's costs while residing in an assisted living facility. Plaintiff oversaw the management and work on the rental properties during the marriage. Assets held by Lynch were also transferred to the parties so that she could qualify for Aid & Attendance Benefits through the Veterans' Administration (VA). While the divorce proceeding was pending, plaintiff purchased another property at 6815 Forestlawn Court with the intent to

-1-

refurbish it and rent it out. Plaintiff purchased that property without notice to defendant or approval by the court, which the trial court found violated a status quo order. Consequently, the trial court assessed plaintiff a penalty and required him to repay $23,000.

At trial, the trial court rejected defendant's argument that assets originally belonging to Lynch, but transferred to the parties' joint accounts, should be classified as defendant's separate property. The trial court found that assets transferred to the parties' joint accounts or placed in their joint names were marital assets, to be included in the marital estate.

The trial court awarded defendant net assets valued at $1,109,155.58, including the marital home and vacant property located along Lake LeAnn in Hillsdale County, Michigan. Plaintiff was awarded net assets valued at $1,095,545.49, including the family cottage at 6853 Forestlawn Court and two of the rental properties on Forestlawn Court. The court ordered that the property at 6828 Forestlawn Court be sold and the proceeds divided equally between the parties.

## I. MARITAL ESTATE

Defendant first argues that the trial court erred in determining that the two rental properties—which the parties acquired using funds received from Lynch, as well as liquid assets of approximately $200,000 that originally belonged to Lynch—were marital assets as opposed to defendant's separate property.[1] We disagree.

In *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014), this Court explained:

> In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010); *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. Special deference is afforded to a trial court's factual findings that are based on witness credibility. *Id*. at 358.

In *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010), this Court explained the trial court's obligation to differentiate between marital assets and separate property in a divorce action:

> In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). Generally, marital property is that which is acquired or earned

---

[1] Lynch died while this matter was pending, with defendant being her only surviving heir.

during the marriage, whereas separate property is that which is obtained or earned before the marriage. MCL 552.19. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. See *Byington v Byington*, 224 Mich App 103, 110, 112-113; 568 NW2d 141 (1997). As a general principle, when the marital estate is divided "each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves*, 226 Mich App at 494.

The categorization of property as marital or separate, however, is not always easily achieved. While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, *Byington*, 224 Mich App at 112, there are occasions when property earned or acquired during the marriage may be deemed separate property. For example, an inheritance received by one spouse during the marriage and kept separate from marital property is separate property. *Dart v Dart*, 460 Mich 573, 584-585; 597 NW2d 82 (1999). Similarly, proceeds received by one spouse in a personal injury lawsuit meant to compensate for pain and suffering, as opposed to lost wages, are generally considered separate property. *Washington v Washington*, 283 Mich App 667, 674; 770 NW2d 908 (2009); *Pickering* [*v Pickering*, 268 Mich App 1, 10; 706 NW2d 835 (2005)]. Moreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and "treated by the parties as marital property." *Pickering*, 268 Mich App at 10-12, citing *Wilson v Wilson*, 179 Mich App 519, 521, 524; 446 NW2d 496 (1989). The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital. See *Korth v Korth*, 256 Mich App 286, 292-293; 662 NW2d 111 (2003); *Reeves*, 226 Mich App at 495-496.

The trial court found that defendant had admitted to depositing approximately $390,000 received from Lynch into joint marital accounts and then using some of that money to purchase the rental properties. The court further found that plaintiff had contributed to the appreciation of the rental properties by maintaining and repairing the properties. The court rejected defendant's claim that these assets were defendant's separate property, finding that defendant "intentionally committed [Lynch's] money to the marital estate and then changed her mind when the divorce was a reality."

Defendant does not dispute that the bank account funds that she is now seeking as her separate property were placed into the parties' joint accounts. Contrary to what defendant asserts, plaintiff was claiming an interest in those assets at trial. The trial court found that the money was transferred to the parties so that Lynch could demonstrate that she had only limited assets, and thereby qualify for VA benefits. Defendant maintains that the money was held in trust for Lynch. But apart from the fact that the funds were transferred into accounts in the parties' joint names, the transfer of assets was necessary to show that Lynch required financial assistance to qualify for VA benefits. Lynch could not qualify for VA benefits and at the same time retain those assets for her support. Because Lynch was required to relinquish those assets before her death to qualify for VA benefits, the trial court did not err in rejecting defendant's

argument that there was no intent to transfer the assets to the parties before Lynch died.[2]  The parties' conduct in placing the money in the parties' joint accounts, and in using some of the money to purchase investment property that was managed by plaintiff, is also inconsistent with treating the property as defendant's separate property.

This case is distinguishable from *Gates v Gates*, 256 Mich App 420, 427-428; 664 NW2d 231 (2003), in which this Court found that the parties held a residence in trust for a relative.  In that case, a brother of one of the parties and his wife resided on the property in question and the property was placed in the parties' names only because the brother had filed for bankruptcy.  *Id.* at 427.  The brother provided the down payment and made all of the mortgage payments.  *Id*. at 427-428.  In this case, while the money originally came from Lynch, the money was placed in the parties' joint accounts, and there was an intent to transfer title to that money so that Lynch could qualify for VA benefits.  Moreover, the parties agreed that plaintiff would make necessary repairs and manage the rental properties to produce income.  Accordingly, this case is factually distinguishable from *Gates*, in which there was no intent that the parties to the divorce would manage or control the underlying asset.

Defendant also argues that the trial court erroneously believed that Michigan no longer recognizes separate property in a divorce proceeding.  This argument is based on the trial court's following comments during the divorce trial:

> *THE COURT:*  Well, there's, you know, listen, there's a couple schools of thought here.  If you're both aware of my reversal in the Supreme Court in *Henderson*[3] you know that there's practically no such thing as separate property.
>
> That being said, I'm not going to let him walk off with the property belonging to her dead mother and you both know that.  I mean that's an over simplification of everything.  But, you know, I mean I'm a court of equity, too.
>
> But, you know, I don't even think that married people own their un-, own underwear based on what the Supreme Court has said.  But on the other hand, uh, I, I don't think I'm going to say—well, gee, you know, her, her mother put up all the, all the dough for this and since she's not here to complain I'm just going to split it in half.  You guys know I'm not going to do that.
>
> Anyway, I didn't tell you anything you don't know so – right?  So I guess we'll be, I don't –
>
> *MS. CURTIS:*  I don't know.  Does the court want to hear our position or our response to that?

---

[2] In answering interrogatories, defendant admitted in March 2014 that she was not holding any property for the benefit of, or in trust for, another person.

[3] *Henderson v Henderson*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2011 (Docket No. 295765).

*THE COURT:*  No, because that's like –

*MS. CURTIS:*  I have –

*THE COURT:*  -- settlement negotiations.  I didn't say anything you don't know.  You guys both know me.  You guys both – you know – I, I don't know.

If you commingle assent [sic, assets], it's not separate property, but I'm not going to award her, you know, inheritance to him, right.  But that – you guys both know that – so that's an over simplification so.

Viewing the trial court's comments in context, there is no merit to defendant's argument that the trial court mistakenly believed that there was no longer a distinction between marital and separate property in Michigan.  The trial court's remark that "there's practically no such thing as separate property" involved a sarcastic comment regarding the court's view of an appellate court decision.  The trial court's later remarks clarified its understanding that "*[i]f you commingle [assets]*, it's not separate property."  In addition, the trial court indicated that it was willing to treat defendant's inheritance from her mother as her own separate property, and the court actually did so when it awarded defendant an account worth approximately $8,000 because that account had been kept only in the names of defendant and her mother.  Defendant also received other assets that had belonged to her mother that were not included in the marital estate (her mother's car and her mother's house in Dearborn Heights).  The trial court only divided assets that had originally been held by Lynch that were later transferred into the parties' names or joint accounts.  Defendant has not shown that the trial court erred in treating those assets as marital property.

Defendant also argues that there was no justification for invading her separate property based on plaintiff's financial need, MCL 552.23, or plaintiff's role in contributing to the acquisition, improvement, or accumulation of the property, MCL 552.401.  However, because the trial court did not find that the disputed assets were defendant's separate property in the first instance, and instead found that Lynch's assets had been converted to marital property, it is not necessary to consider this argument.

## II.  VALUATION AND DIVISION OF MARITAL PROPERTY

Next, defendant argues that the trial court erred in its valuation of assets and its division of the marital estate. We disagree.  In *Woodington v Shokoohi*, 288 Mich App 352, 355-356; 792 NW2d 63 (2010), this Court summarized the standards for reviewing a trial court's division of property in a divorce:

" 'In deciding a divorce action, the circuit court must make findings of fact and dispositional rulings.' "  *McDougal v McDougal*, 451 Mich 80, 87; 545 NW2d 357 (1996) (citations omitted).  This Court must first review the trial court's findings of fact. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992).  Findings of fact, such as a trial court's valuation of particular marital assets, will not be reversed unless clearly erroneous. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990).  A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm

conviction that a mistake was made. *Id*.; *Johnson v Johnson*, 276 Mich App 1, 10-11; 739 NW2d 877 (2007). Special deference is given to the trial court's findings when they are based on the credibility of the witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). The determination of the proper time for valuation of an asset is in the trial court's discretion. *Gates v Gates*, 256 Mich App 420, 427; 664 NW2d 231 (2003). If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. *Sparks*, 440 Mich at 151-152. "The court's dispositional ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005).

Defendant argues that she was entitled to a greater share of the marital estate in light of plaintiff's undisclosed purchase of a house in violation of the status quo order. Although the trial court agreed that plaintiff violated the status quo order, it addressed that violation by requiring plaintiff to pay back money he took from a marital account to purchase the property.

Defendant also argues that, to the extent Lynch's former assets were included in the marital estate, equity demanded that she be awarded a substantially greater share of the marital estate than plaintiff. This argument is a rehash of defendant's argument that she should have received all or most of Lynch's former assets as her separate property. As explained previously, the trial court did not err in finding that those assets were part of the marital estate. Moreover, the trial court found that the commingling of Lynch's money with the parties' joint accounts was consistent with the parties' practice throughout their marriage of using Lynch's money to augment their marital estate, that the two rental properties that were purchased with Lynch's former funds were purchased in the parties' names for investment purposes, and that plaintiff contributed to the appreciation of the properties by performing maintenance and repairs until defendant told him not to do so. Under these circumstances, the trial court did not abuse its discretion by subjecting Lynch's former assets to the same distribution scheme as the remainder of the marital estate.

Defendant also argues that the trial court erred in awarding her the marital home in West Bloomfield instead of ordering that the home be sold and the proceeds divided equally. Neither party wanted that asset. Although the parties agreed that the house should be sold, they could not agree on material issues related to its sale. The trial court believed that a court-ordered sale would require the appointment of a receiver, or would lead to the parties frequently appearing before the court because they could not agree on terms of a sale. Accordingly, it was reasonable for the court to award this asset to one of the parties, who alone could make decisions such as deciding whether to sell the property "as is," or to make certain improvements or other remodeling that would increase the value of the home, and could be recaptured at sale.

Defendant further complains about the trial court's use of the State Equalized Value (SEV) value for the home to establish its value. Defendant maintains that the SEV was not reflective of the home's actual value, which was lower. The trial court assigned the home a value of $128,640. In its opinion, the trial court stated that it "received one value for the Muerdale house. The net value of the home is $128,640 based upon Plaintiff's exhibit F – double the SEV value or $212,640 minus the home equity loan of approximately $84,000 as

stated in Defendant's exhibit 20." In her trial brief, defendant had identified the value of the property as $212,640, with a net value of $126,591.92 after deducting a home equity loan. In her closing brief, defendant listed the net value of the home, based on the SEV, as $128,142.02. The trial court's final value was slightly different, approximately $500 higher, but it is apparent that defendant had only offered the SEV value as evidence of the property's value. Although defendant offers arguments for why that value is not accurate, the time to do that was at trial. Considering that the trial court was not presented with other evidence of the home's value, and that the SEV was the only evidence of value that was offered below, defendant has failed to show that the trial court clearly erred in its valuation of the marital home.

Defendant similarly argues that the trial court erred in awarding her the Lake LeAnn property in Hillsdale County, with a value of $26,000. Defendant asserts that the property cannot be sold for this assigned value, which defendant maintains has no evidentiary support. We disagree. The trial court noted that the property was purchased by the parties and another couple for $52,000, with each couple contributing $26,000. Plaintiff was advised by a realtor that the property was worth $46,000. The parties had loaned the other couple $20,000, but that couple no longer wanted the property. Each party had made an offer to buy the other party's interest, but they could not come to an agreement. In her trial brief, defendant again had relied on the SEV for the Lake LeAnn property and the parties' 50 percent interest to arrive at a value of $29,890. In her closing brief, defendant set the value for the Lake LeAnn property even higher, at $59,780. Given these valuations offered by defendant, there is no merit to defendant's argument that the trial court clearly erred by over-valuing the property.

Although defendant would have preferred for the trial court to order the property sold and the proceeds divided equally between the parties, the parties themselves could not agree on the value of the property, each offering to purchase the other's interest, but each believing it was worth more than the other party was offering. As with the marital home, it was not unreasonable for the trial court to award the property to one party, in order to avoid further protracted disputes or the necessity of a receiver to handle the sale.

Next, defendant argues that the trial court erred in finding that she had withdrawn $15,000 to purchase a car when her car lease expired while this action was pending. During the proceeding, the trial court approved defendant using $15,000 in marital assets to obtain a car for herself, which would be accounted for at the end of the case. At the end of the case, the trial court deducted that $15,000 from a $60,000 cashier's check held by plaintiff. The remaining portion of the check was to be divided equally between the parties. Although the trial court allowed defendant to withdraw $15,000 for a new car, defendant claims that she actually only used $10,545, the amount obtained when she cashed in a certificate of deposit that had matured. Regardless of whether defendant used only $10,545 for her new car, the record discloses that defendant admitted to withdrawing $15,000, by either taking money out of the bank or by cashing certificates of deposit. Defendant does not cite any evidentiary support for her claim that she took less than $15,000, the amount authorized by the court. Accordingly, defendant has not shown any error by the trial court with respect to this issue.

Defendant next argues that the trial court erred by assigning her responsibility for the balance owed on a Capital One credit card account. Defendant maintains that this was a joint marital debt for which plaintiff should be responsible because he stopped making payments on it.

Defendant incorrectly asserts that the trial court assigned this debt to her because she started withdrawing the amount of her paychecks from the parties' joint account that had been used to pay the credit card debt. Although the trial court remarked that this was a reason why the debt was not paid, it was not the reason the court assigned the debt to defendant. Instead, the trial court assigned the debt to defendant because it found "that defendant kept charging on the Capital One card but did not pay it" and "[t]he majority of the post-filing charges were hers." It was not inequitable for the court to assign this debt to defendant when she was responsible for the majority of that debt.

Defendant also argues that the trial court failed to account for plaintiff's excessive spending while the divorce was pending. Although the trial court faulted plaintiff for not disclosing his house purchase, it assessed a financial penalty against him for that. Plaintiff's purchase of other household and personal items was necessitated by his need to set up a separate residence, and defendant had refused to allow him into the marital home to retrieve items. The trial court did not find that plaintiff's expenditures were for out-of-the-ordinary expenses that went beyond maintaining the status quo. The parties had adequate income to treat such expenses as ordinary or typical. In addition, the trial court increased the value that plaintiff had placed on personal property in his possession, such as a pontoon boat, motorcycle, jet skis, and trailer, almost doubling the value of those items from $7,000 to approximately $14,000. Defendant has not established that the trial court's property distribution was inequitable in light of plaintiff's expenditures during the pendency of the proceeding.

Defendant also complains that plaintiff paid $12,756.20 to his attorney, whereas she was only allowed to pay $5,000 to her attorney from joint assets. Defendant maintained that she owed her attorney $84,134.85, but had only paid $5,000; she asked the court to order plaintiff to pay $75,000 of her attorney fees because plaintiff did not cooperate or act candidly in these proceedings. As discussed in section III, *infra*, the facts of this case did not support requiring plaintiff to pay defendant's attorney fees. The trial court properly required the parties to be responsible for their respective attorney fees. Defendant has not shown that she should have received a greater share of the marital estate in order to pay her attorney fees.

In sum, we conclude that the trial court did not clearly err in its valuation of particular marital assets, and its overall distribution of the marital estate was fair and equitable in light of the parties' circumstances.

III. ATTORNEY FEES

Finally, defendant argues that the trial court erred by denying her request that plaintiff be ordered to pay some of her attorney fees. We disagree.

This Court generally reviews a trial court's decision whether to award attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id*. Any factual findings made by the trial court when deciding whether to award attorney fees are reviewed for clear error, and a finding will be clearly erroneous only if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 700.

MCR 3.206(C) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

Thus, this rule provides two separate avenues for awarding attorney fees in a divorce action. *Richards*, 310 Mich App at 700-701.

Attorney fees under MCR 3.206(C)(2)(a) are available "only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (citation omitted). In reviewing a party's ability to prosecute or defend the action, a party "may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Id*. (citation omitted). A party may be able to demonstrate an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees. *Id*.

The trial court awarded plaintiff assets worth $1,095,545.49, while defendant received assets valued at $1,109,155.58. The distribution of assets gave defendant approximately $13,610 more than plaintiff, a large portion of which was cash. In addition, plaintiff was ordered to repay $23,000 for the money he used to purchase a house while the divorce proceeding was pending. Both parties have decent incomes. While plaintiff's income is higher, defendant did not show that she was unable to bear the expense of this action without invading assets on which she depended for support. Accordingly, the trial court did not abuse its discretion by refusing to award attorney fees under MCR 3.206(C)(2)(a).

With regard to MCR 3.206(C)(2)(a), defendant claims that plaintiff failed to comply with discovery requests and did not turn over information regarding assets. As the trial court thoroughly explained in its opinion, however, both parties engaged in questionable conduct throughout the case, and both parties were responsible for creating delays and causing the case to

drag on. The trial court acted within its discretion by holding the parties responsible for their respective attorney fees.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly