568 N.W.2d 141 (1997)
224 Mich.App. 103
Margaret E. BYINGTON, Plaintiff-Appellant,
v.
Richard P. BYINGTON, Defendant-Appellee.
Docket No. 181936.
Court of Appeals of Michigan.
Submitted June 4, 1996, at Grand Rapids.
Decided June 10, 1997, at 9:00 a.m.
Released for Publication September 11, 1997.
*142 Howard & Howard Attorneys, P.C. by James H. Geary, Kalamazoo, and Henry Baskin, P.C. by Henry Baskin, Farmington Hills, for Plaintiff-Appellant.
Rhoades, McKee, Boer, Goodrich & Titta by Bruce W. Neckers and Douglas P. Vanden Berge, Grand Rapids, for Defendant-Appellee.
Before O'CONNELL, P.J., and MARKMAN and G.R. CORSIGLIA[*], JJ.
O'CONNELL, Presiding Judge.
In this divorce action, plaintiff appeals as of right the division of property. The bulk of the $12 million marital estate has been divided to the satisfaction of the parties, but they dispute whether one particular asset, earned by defendant after moving to another state and after plaintiff had filed for divorce, is a marital asset properly subject to division. The trial court, in a thorough and well-written opinion, concluded that it was not and awarded it entirely to defendant.
We believe that the court erred in holding that the asset was not a marital asset. While the facts that defendant earned the asset in issue largely without contribution from plaintiff and after the parties had evinced an intent to lead separate lives are significant, their significance lies not in determining the bounds of the marital estate, but in determining how that estate should be apportioned. Accordingly, we vacate the division of property with respect to its treatment of the compensation package and remand for the court to determine the proper apportionment thereof.
The parties were married in 1961. At the time, defendant was launching what was to become a very successful career in the hospital supply field. Defendant began a small business in the basement of his father's pharmacy, and, in 1984, sold the business to a larger concern, the Hillman Company, for approximately five million dollars. He continued on with Hillman as a salaried employee.
In 1989, the Stuart Company acquired Hillman, and defendant moved to Pennsylvania to take an executive position with Stuart. Plaintiff had always been a supportive *143 spouse, but had taken little or no direct role in defendant's business pursuits. Because the two had a daughter who wished to complete her high school years at the school she had been attending, plaintiff remained in Michigan upon defendant's move to Pennsylvania. The parties agree that there was no marital discord at this time and that the decision to have a "commuter marriage" was intended to be temporary.
Unfortunately, despite the parties' frequent visits to one another, the marriage soon became troubled. Though the parties attempted to preserve their marriage, the two recognized during the summer of 1992 that divorce was likely.
Plaintiff filed for divorce on August 10, 1992. In the fall of 1992, the parties began to work out a property division. To this end, they employed Thomas Scholler, an attorney and accountant, and agreed to have him assist them in arriving at an equitable division of property. In December 1992, Scholler submitted to the parties a detailed document entitled "Schedule of Allocated Asset Values" in which he addressed all the significant assets of the marital estate as it existed at that time, recommending a disposition of each. It does not appear that the parties ever adopted the December 1992 recommendation of Scholler.
Two events appear to have delayed an agreement regarding a property division. First, defendant was heavily involved in negotiations pertaining to the acquisition of Stuart by a still larger company. The acquisition fell through in February 1993. Second, in the spring of 1993, plaintiff decided to run for public office. To increase plaintiffs chance of success, and to minimize the possibility that the parties' difficulties would be aired publicly, the two agreed that the divorce proceedings would be held in abeyance until plaintiffs political campaign ended.
During this abeyance period, defendant entered into a new employment contract with Stuart. The disposition of the compensation due under the terms of this contract constitutes the focus of the parties' dispute on appeal.
Soon after the acquisition had fallen through in February 1993, defendant tendered his resignation to Stuart. Stuart, anxious to have defendant remain with the company, offered him a more lucrative compensation package. The general terms were negotiated around March 23, 1993, and provided that, if various contingencies came to pass, most notably the acquisition of Stuart by another entity, defendant would receive certain bonuses and incentives. Defendant also became eligible for a "phantom stock [option]" plan, the details of which are not relevant for purposes of this appeal, but which in general allowed defendant to benefit from an increase in the stock price of Stuart. Defendant accepted the offer and remained with Stuart. Defendant's prior employment contract did not contain similar terms.
Plaintiffs pursuit of political office was ultimately unsuccessful. Nevertheless, she soon obtained alternative governmental employment in an executive, well-paid capacity.
The parties resumed their settlement negotiations in the fall of 1993 and, in light of the intervening six months, agreed to use July 1, 1993, as the valuation date of their assets. Although defendant had not immediately disclosed his new terms of employment, he did so by June 24,1993.
In December 1993, through the efforts of defendant and others, Stuart was purchased by another company and, consequently, defendant became eligible to receive certain contingent compensation provided for in his new employment agreement with Stuart. This compensation ultimately totaled approximately $2 million. Defendant received some or all of this compensation in 1994.
In summary, defendant moved to another state in 1989. The marriage became troubled, and plaintiff filed for divorce in 1992. Both parties concurred in a delay in the division of the marital estate. In February 1993, defendant resigned from his employment, but was lured back by the offer of a lucrative, contingent bonus package. In December 1993, the contingencies set forth in defendant's employment contract came to pass, due in part or whole to defendant's efforts during the preceding nine months.
*144 At that time, defendant became eligible to receive the compensation now in issue.
On December 9, 1994, a judgment of divorce was entered. With respect to the $2 million compensation package, the court ruled that it was not part of the marital estate, stating:
The assets here in dispute were not only acquired by defendant well after, almost two years after, this case was started; those assets were earned by defendant without a contribution from plaintiff. An asset earned during a marriage, but received thereafter, is a marital asset. An asset actually generated, not merely received, after a marriage has broken down is not a product of that marriage. That is what happened in this case. [Citations omitted.]
The circuit court also stated, "the compensation package at issue is not a marital asset." Accordingly, the court excluded the compensation package from the marital estate, awarding it entirely to defendant as separate property.
Plaintiff now appeals the circuit court's decision as of right. We review the court's findings of fact for clear error and then determine whether the ultimate dispositional ruling was fair and equitable in light of the facts, reversing the disposition only if we are left with the firm conviction that the distribution was inequitable. Sands v. Sands, 442 Mich. 30, 34,497 N.W.2d 493 (1993).
Marriage is a status that legally terminates only upon the death of a spouse or upon entry of a judgment of divorce. Kurz v. Kurz, 178 Mich.App. 284, 291, n. 1, 443 N.W.2d 782 (1989). There is no de facto divorce and Michigan jurisprudence does not recognize consensual divorce. Michigan law permits only de jure divorce in accordance with the statutory authority conferred on the circuit courts, Pruitt v. Pruitt, 90 Mich.App. 230, 233, 282 N.W.2d 785 (1979), including a requirement of judicial imprimatur to make even a mutually agreed-upon divorce effectual. Goldstein v. Kern, 82 Mich.App. 723, 726, n. 1, 267 N.W.2d 165 (1978). A judgment of divorce must include a "determination of the property rights of the parties." MCR 3.211(B)(3); Yeo v. Yeo, 214 Mich-App. 598, 601, 543 N.W.2d 62 (1995). When determining property rights, the court may apportion all property that has "come to either party by reason of the marriage...." M.C.L. § 552.19; M.S.A. § 25.99. The property that is subject to apportionment is referred to as "marital property," and it is this property that comprises the marital estate. 2 Curtis, Bassett & Kidder, Michigan Family Law (4th ed.) (ICLE, 1993), § 14.9, p. 14-12. Assets earned by a spouse during the marriage are properly considered part of the marital estate. See VoUmer v. Vollmer, 187 Mich.App. 688, 690, 468 N.W.2d 236 (1991). This is true where the assets are received during the existence of the marriage, id., but also where the assets are received after the judgment of divorce.
With respect to the case sub judice, the parries do not dispute that the asset in question, defendant's compensation package, was earned before the entry of the judgment of divorce. Because this asset was earned by a spouse before the entry of a judgment of divorce, it is marital property and is properly considered part of the marital estate. See Vollmer, id. The circuit court erred in concluding otherwise.
In defense of the trial court, it is true that this Court has suggested previously that events other than death or the entry of a divorce judgment may be sufficient to render property earned subsequently by a spouse the separate property of that spouse. In Wilson v. Wilson, 179 Mich.App. 519, 446 N.W.2d 496 (1989), the parties to a divorce action disputed whether the defendant's settlement in a personal injury action was properly considered part of the marital estate. The injury occurred in 1983 and the parties were divorced in 1987. The trial court reasoned that because the parries had had no romantic relationship since 1980 and because the parties had otherwise failed to satisfy their respective obligations since 1980 in what appears to have been a very "traditional" marriage,[1] the settlement was not a marital *145 asset. This Court reversed, stating that the "acts seen by the trial court as ending the marriage are insufficient to end a marriage and to end the rights included within that marriage without some external public manifestation of intent by the parties, such as moving out or filing a complaint for divorce." Id., pp 523-524, 446 N.W.2d 496.
The obvious implication of the Wilson decision is that an "external public manifestation" of the intent to divorce could, at least in some circumstances, be sufficient to create a separate estate with respect to assets subsequently earned. In fact, the Wilson Court intimated that the marital estate effectively ended when the parties in that case took up separate residences in 1987.[2]Id., p. 524, 446 N.W.2d 496.
While we agree with Wilson that the manifestation of the intent to lead separate lives, as evidenced by the filing of a complaint for divorce or the maintenance of separate homes, may be of crucial significance when apportioning the marital estate, we are hesitant to construe Wilson as standing for the more rigid proposition that property earned after such a manifestation is separate property. Our reticence is founded on several grounds. First, the asset at issue in Wilson was a settlement for a personal injury suffered by the defendant, which, to reiterate, this Court concluded to be marital property. However, this Court has since held that the personal injury action of one spouse, to the extent that it represents pain and suffering as opposed to lost wages, is not marital property. Lee v. Lee, 191 Mich.App. 73, 79, 477 N.W.2d 429 (1991).[3] We are hesitant to embrace the reasoning of Wilson underlying its conclusion that a tort claim is marital property where a tort claim is now considered to be separate property.
Second, and more directly, property earned by one spouse during the existence of a marriage is presumed to be marital property. See Vollmer, supra. This Court has gone so far as to state that, when apportioning the marital estate incident to a divorce, the court must strive for "an equitable division of any increase in net worth that may have occurred between the beginning and the end of the marriage." Bone v. Bone, 148 Mich.App. 834, 838, 385 N.W.2d 706 (1986). We are aware of no authority corroborating the inference in Wilson that events short of death or the entry of the judgment of divorce may abbreviate the existence of the marital estate.
Thus, while the emphasis of the Wilson decision on the external public manifestation of the intent to lead separate lives may not have been misplaced in the context of dividing a marital estate, we decline to endorse Wilson to the extent that it may be interpreted as standing for a broader rule of law that property acquired after a public manifestation of the intent to lead separate lives is not part of the marital estate. We have attempted to harmonize our decision today with Wilson, but we are not bound by that decision, see Supreme Court Administrative Order No. 1996-4, and to the extent that our holding today is inconsistent with Wilson, we respectfully demur.
Returning, then, to the case presently before us, the trial court erred in holding that defendant's compensation package was not part of the marital estate. While there existed some tenable support for the court's conclusion, we believe the proper reading of prior case law requires that the court not consider actions on the part of spouses that reflect an intent to lead separate lives when determining what assets comprise the marital estate. However, the court *146 may properly consider manifestations of intent to lead separate lives when apportioning the marital estate, an issue addressed immediately below.[4]
The goal of the court when apportioning a marital estate is to reach an equitable division in light of all the circumstances. Ackerman v. Ackerman, 163 Mich. App. 796, 807, 414 N.W.2d 919 (1987). Each spouse need not receive a mathematically equal share, but significant departures from congruence must be explained clearly by the court. Knowles v. Knowles, 185 Mich.App. 497, 501, 462 N.W.2d 777 (1990). When dividing the estate, the court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health, and needs, fault or past misconduct, and any other equitable circumstance. Sparks v. Sparks, 440 Mich. 141, 158-160, 485 N.W.2d 893 (1992). The significance of each of these factors will vary from case to case, and each factor need not be given equal weight where the circumstances dictate otherwise. Id., p. 159, 485 N.W.2d 893.
It is with respect to this weighing of the significance of the Sparks factors that a public manifestation of intent to lead separate lives has relevance. As a practical matter, we believe that the factor of the "contribution of each party to the marital estate" will generally take on increasing significance with regard to property acquired after such a manifestation. Generally, a court can expect to find a significantly lesser contribution by the nonacquiring spouse with respect to property acquired after public manifestation of an intent to lead separate lives than with respect to property acquired before such a manifestation. Accordingly, in considering the Sparks factors with regard to property acquired after such a manifestation, we believe that courts will normally find the contribution factor to be a particularly significant factor. Whatever presumption of congruence exists with respect to the distribution of marital assets, see Knowles, supra, p. 501, 462 N.W.2d 777, becomes attenuated after the parties have publicly manifested their intent to lead separate lives. In particular, we recognize the possibility that appropriate weighing of the Sparks factors may in some cases result in a determination that the nonacquiring party is entitled to no portion of property acquired after a manifestation of intent to lead separate lives because of the difference in the parties' contributions to acquisition of such property. However, we also recognize that consideration of other Sparks *147 factors may in other cases require some apportionment of such property up to and including an equal apportionment.[5]
As explained above, we believe that defendant's compensation package is properly considered part of the marital estate. Thus, when dividing the marital estate, the court should have considered the entire estate and applied the relevant Sparks factors to the entire corpus.
The trial court made detailed findings of fact with respect to the Sparks factors set forth above, ultimately concluding that the parties stood in relative parity and that an equal distribution was appropriate. However, in reaching this conclusion, the court expressly excluded from consideration the compensation package presently in issue for the reason that the court believed it to be separate property. The court's discrete treatment of the compensation package and the remainder of the estate leaves this Court unable to fashion an appropriate award.
Accordingly, we must remand this matter to the trial court for application of the Sparks factors to the compensation package and entry of a judgment of divorce. On remand, the trial court should bear in mind the portion of the property division to which the parties have not objected, although the remand is limited to the compensation package. In the context of the entire marital estate, the court must determine the proper division of the portion in disputethe compensation packageby considering the relevant Sparks factors. That plaintiff may have contributed little or nothing to the compensation package in issue will be a significant factor to consider in applying the Sparks factors. Similarly, the actions of the parties in delaying the entry of the judgment, and the reasons therefore, may also be relevant. The court may again conclude that plaintiffs lack of contribution, coupled with her other substantial assets, significant earning capacity, and desire to have the judgment delayed, justify a division of property that, in effect, awards most or all of defendant's compensation package to defendant. Then again, the court may, in light of the wide range of relevant factors, conclude that to award plaintiff some share of the augmented value of the estate would be equitable under the circumstances.
The division of property is vacated in part with respect to its treatment of the compensation package, and the matter is remanded for proceedings consistent with this opinion. We retain jurisdiction. The trial court is instructed to enter its judgment within sixtythree days of this decision.
MAEKMAN, J., concurred.
GEORGE R. CORSIGLIA, Circuit Judge (dissenting).
I respectfully dissent. I would affirm the trial court's judgment.
As a preface, I believe it to be helpful to view the marital estate as distinct from the assets it contains. In my view, the marital estate includes the joint assets of the parties that they accumulated together while married, referred to as marital assets, and may also include separate assets that are the assets of the individual spouses. See Mastrangel, The Family Jewels, 73 Mich. B J 552 (1994).
At issue in the present case is whether assets earned by one party after unambiguous public manifestation of the intent to divorce, but 6e/ore entry of the judgment of divorce, are properly considered a marital asset. I conclude that the assets at issue in the present case are not marital assets.
As set forth in Wilson v. Wilson, 179 Mich. App. 519, 523-524, 446 N.W.2d 496 (1989), a marital estate typically closes on the date on which there has been "some external public manifestation of intent by the parties [to end their marriage], such as moving out or filing a complaint for divorce." While assets earned during the marriage but received thereafter are properly considered part of *148 the marital estate, see VoUmer v. VoUmer, 187 Mich.App. 688, 690, 468 N.W.2d 236 (1991), there is no bright-line rule that classifies an asset as "marital property" or "separate property." The trial court must examine when the asset was acquired and the claiming spouse's contribution to the acquisition, improvement, or accumulation of the property case by case. See Davey if. Davey, 106 Mich.App. 579, 308 N.W.2d 468 (1981); Lee v. Lee, 191 Mich.App. 73, 477 N.W.2d 429 (1991).
I believe that plaintiff is correct that she is entitled to share in the pecuniary success that defendant has achieved, but believe that she has no right to share in the compensation that defendant achieved by his own efforts after the public manifestation of the breakdown of the marriage. The court may award to either spouse property that has inhered to the marital estate "by reason of the marriage...." M.C.L. § 552.19; M.S.A. § 25.99. However, the shadow of one spouse's marital contribution does not extend indefinitely. The courts of this state have concluded that, generally speaking, a marital estate may close when there has been an external manifestation of the breakdown of the marriage. Wilson, supra. At that point, each spouse is entitled to an equitable distribution of the assets generated by reason of the marriage, i.e., "marital assets." M.C.L. § 552.19; M.S.A. § 25.99. But assets generated solely by the efforts of one spouse after a public manifestation of the marriage breakdown may not properly be considered part of the marital estate for distribution, see VoUmer, supra, except in exceptional circumstances. See M.C.L. § 552.23; M.S.A. § 25.103; Rogner v. Rogner, 179 Mich.App. 326, 445 N.W.2d 232 (1989); Davey, supra.
In the present case, I find no clear error in the court's conclusion with respect to the compensation in issue. Defendant negotiated a new employment contract approximately seven months after the parties originally obtained the assistance of an attorney and accountant to help divide the estate. Contrary to plaintiffs suggestions, this contract was not strictly a reward for defendant's efforts over the years, but, rather, it was designed to elicit defendant's best efforts in the future to negotiate the acquisition of Stuart, and it was structured to reward him if he was successful in this. As noted by the trial court, there is no evidence that plaintiff contributed in any fashion to defendant's efforts to effectuate the acquisition entitling defendant to the compensation in issue. Similarly, there is no evidence that defendant's employment contract was simply the continuation of a similar contract in existence during the marriage, the later contract was meant to entice defendant back to Stuart after he had resigned.
Finally, while the parties subsequently updated, in July 1993, the valuation of the assets to be divided, I find no direct evidence that the parties intended that assets acquired after the original valuation be included in this second valuation. The record evidence regarding this issue is ambiguous, and in light of this, I defer to the trial court's superior position in evaluating the witnesses' testimony. Danielson v. Lazoski, 209 Mich.App. 623, 629, 531 N.W.2d 799 (1995). Therefore, finding no error in the court's conclusion that the assets in issue were acquired after the breakdown of the marriage, I would affirm the factual findings of the court.
I am cognizant that plaintiff contributed substantially to defendant's position in his chosen field. Plaintiffs contribution was recognized by the trial court, and she received an admittedly equitable share of the marital estate, that is, those assets generated before the public manifestation of the marital breakdown. This share is a substantial sum of money. While the trial court determined that she was not entitled to a share of defendant's most recent compensation plan, this determination has not left plaintiff in penury. Had it, it is conceivable that the trial court could have exercised its equitable discretion and awarded plaintiff a share of this property despite the fact that it was not generated during the course of the marriage. See, e.g., Booth v. Booth, 194 Mich.App. 284, 486 N.W.2d 116 (1992) (spouse entitled to share of entire pension plan of other spouse even though one-third of it accrued before the marriage). However, given the lack of exceptional circumstances in the present case, I am not left with the firm conviction that the *149 distribution was inequitable. Sands v. Sands, 442 Mich. 30, 497 N.W.2d 493 (1993).
I would affirm the decision of the trial court.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] The precise words of this Court, in summarizing the holding of the trial court, were that "plaintiff had stopped cooking and otherwise caring for defendant because he stopped giving her money." Wilson, supra, p. 522, 446 N.W.2d 496.
[2] The decision is somewhat ambiguous in this respect. The opinion reads that the marriage "did not end in 1980, but in 1987." Id., p. 524, 446 N.W.2d 496. However, in 1987, the parties both began living apart and were legally divorced. Despite this ambiguity, we infer from the predicate reasoning in the opinion that the event of crucial significance was not the entry of the judgment of divorce but the public manifestation of the intent to divorce, which, in Wilson, was the establishment of separate domiciles.
[3] Of course, the separate property of one spouse may be awarded incident to a divorce to the other spouse under appropriately compelling circumstances. M.C.L. § 552.23; M.S.A. § 25.103; see also Bywater v. Bywater, 128 Mich.App. 396, 399-400, 340 N.W.2d 102 (1983).
[4] The inquiry regarding which assets comprise the marital estate is distinct from the question of the valuation of those assets. For purposes of dividing property, marital assets are typically valued at the time of trial or at the time judgment is entered, Kilbride v. Kilbride, 172 Mich.App. 421, 436, 432 N.W.2d 324 (1988), though the court may, in its discretion, use a different date. Thompson v. Thompson, 189 Mich.App. 197, 199-200, 472 N.W.2d 51 (1991). When dividing assets incident to a divorce, the court must first consider whether an asset is properly considered a marital asset. Where the court determines that a particular asset is, in fact, a marital asset, it must then value the asset as of either the date of trial, the date of judgment, or a more appropriate date.

As a practical matter, this process creates conflicting motivations as between the parties to a divorce regarding its finalization. An early valuation date encourages parties to postpone potentially economically beneficial contractual relationships to avoid having to share such accessions of wealth with a spouse. A later valuation date encourages those who think the other spouse is in line for such a financial asset to delay the proceedings in hopes of securing for themselves a portion of such asset. A related public policy complication is that if a valuation date is regarded as fixed, a party with an expectancy of entering into a potentially economically beneficial contractual relationship would be provided with an incentive not to attempt to reconcile. Hence, in determining the valuation date, the circuit court must and does retain considerable discretion to see that equity is done, Boonstra v. Boonstra, 209 Mich.App. 558, 563, 531 N.W.2d 777 (1995), thereby limiting to whatever extent feasible any artificial impetus to file for, delay, hasten, or finalize a divorce. Further, an important goal of the process by which marital assets are divided properly ought to be to limit the extent to which the process skews ordinary financial arrangements and incentives.
We suggest that, to forestall efforts by any party to use time for economic gamesmanship or leverage in a divorce proceeding, circuit courts utilize their authority under MCR 2.401(B)(1)(b) and 3.210(A)(2) and (3) by scheduling firm valuation and trial dates shortly after the filing of a divorce complaint and by generally holding to the valuation date even if the trial date is postponed.
[5] A party who acquires property before a divorce judgment but after a manifestation of intent to lead separate lives is in a different position from a party who acquires property after a divorce judgment because such party runs the risk that the court will award a portion of the property to the nonacquiring spouse either because it finds that the nonacquiring party contributed to the acquisition or because of other equitable factors set forth in Sparks.