# STATE OF MICHIGAN

# COURT OF APPEALS

SALLY ANN BEAUCHAMP,

      Plaintiff-Appellee,

UNPUBLISHED
October 23, 2018

v

RONALD ROBERT BEAUCHAMP,

      Defendant-Appellant.

No. 340792
Delta Circuit Court
LC No. 16-023178-DO

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

During his marriage to plaintiff, defendant began a medical marijuana grow operation as a registered caregiver under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, providing medical marijuana for qualified patients. Plaintiff filed a complaint for divorce and requested spousal support. The trial court issued a judgment of divorce in which defendant was awarded his medical marijuana grow operation in the division of marital assets. The trial court also awarded plaintiff spousal support in the amount of $1,900 per month, taking into consideration income that defendant received for the sale of medical marijuana to his qualified patients in the support calculation. Defendant appeals as of right. We affirm.

## I. FACTS

Plaintiff and defendant were married in 1988. Over the course of the marriage—and up to the point of these proceedings—defendant maintained a drywall business. Over two decades later, defendant purchased a camp property with funds earned during the marriage and began to use the property to grow medical marijuana as a licensed grower.

After defendant was treated for lung cancer in 2014, he could no longer work more than 20 to 30 hours per week on drywall projects. Defendant's sister stated that she "loaned" defendant money in excess of $17,000 because he was unable to meet his monthly expenses without assistance. The "loan" was not documented.

-1-

By the summer of 2014, defendant was primarily focusing on his marijuana grow operation instead of his drywall business. Defendant became a registered caregiver for five qualified patients.[1] In time, plaintiff came to believe that defendant was selling marijuana to individuals other than his qualified patients. She confronted him about this, but did not testify to the details of any discussions that took place.

Plaintiff filed a complaint for divorce in June of 2016. She requested $2,500 per month in spousal support and a greater portion of the marital estate. While the proceedings were pending, the parties agreed that, beginning in September 2016, and every month thereafter until otherwise ordered by the trial court, defendant would pay certain expenses as interim spousal support. According to defendant, he was only able to afford these payments because of money that his sister had loaned him.

James McNeil, plaintiff's expert witness in the field of marijuana plant street valuation, testified that during a visit to the camp property in April of 2017, defendant admitted to possessing 45 mature marijuana plants. McNeil observed a total of 17 plants that he believed had reached maturity, valuing them at $1,000 each, at a minimum. Over the course of these proceedings, defendant initially agreed that he only had 45 marijuana plants growing at the camp property. However, he later testified that he had 72 plants growing on the premises.

According to McNeil, when caregivers supply qualified patients with marijuana, the exchange is actually a sale. Defendant testified that he did not sell marijuana edibles, but freely gave them to his qualified patients. Not including these gifted edibles, defendant would distribute approximately 10 ounces to each of his five qualified patients per month at a rate of $200 per ounce.

Defendant placed at least 90 percent of his total earnings into a single account, which had been created for his drywall business. Defendant stated that he did not place any money from the sale of marijuana into that account, but later acknowledged that he did not keep a separate account for those funds. Defendant initially maintained that he did not earn any income or derive any profit from his marijuana grow operation or sales made to his qualified patients; rather, money defendant received from his qualified patients would go toward the bills associated with his marijuana grow operation, as well as a $15,000 line of credit that the Upper Peninsula State Bank extended to him to fund the operation. At the time of the divorce hearing, defendant owed the full amount of the loan to the bank. Defendant later acknowledged that on occasion, there would be excess funds stemming from the sale of marijuana that he would keep for personal use. Defendant also admitted that there was no way for him to ensure that the costs associated with maintaining the medical marijuana operation perfectly offset the income he received from his qualified patients.

---

[1] As a registered caregiver with five qualified patients, defendant was legally permitted to possess up to 72 marijuana plants and up to 15 ounces of usable marijuana under the MMMA. See *People v Hartwick*, 498 Mich 192, 219 n 54; 870 NW2d 37 (2015).

With regard to expenses incurred as a result of his marijuana operation, defendant paid: $2,200 to $2,300 per month for electricity, although this amount was subject to fluctuations depending on the month; $4,000 per year for light bulbs; $2,400 per year for dirt; between $1,500 and $2,000 per month for nutrients; between $3,500 and $4,000 per year for the use of propane gas; and a total $5,000 per year to his qualified patients, who sometimes assisted him in trimming the marijuana plants.

Between 2015 and 2017 (before the divorce hearing), defendant earned between $44,900 and $46,900 from his drywall business. Defendant continued to take on new drywall projects. Balance statements associated with a bank account for defendant's drywall business indicated that: in 2015, the business received deposits totaling $108,369.54; in 2016, the business received deposits totaling $75,278.79; and between January 2017 and March 2017, the business received deposits totaling $19,570.37.

With regard to defendant's income, the trial court found that defendant earned an average of $15,300 per year from his drywall business between 2015 and 2017,[2] and $120,000 per year from his medical marijuana grow operation during that same period. The trial court reached the $120,000 figure by multiplying 50 ounces per month in marijuana sales by $200 per ounce. The trial court further found that defendant incurred annual expenses of $63,150 in order to maintain his marijuana grow operation. Using these calculations, the trial court determined that defendant netted approximately $4,737.50 per month from activities solely associated with his marijuana grow operation. The trial court then accounted for defendant's drywall-related income of $1,275 per month and his general expenses unrelated to the marijuana grow operation of $3,055 per month, finding that defendant was ultimately left with $2,957.50 in disposable monthly income. Plaintiff, however, experienced a net loss of $1,685.60 per month when examining her income and expenses.

After calculating the value of the marital estate, the trial court awarded the marijuana grow operation to defendant. Lastly, after considering "the length of the marriage, the ability of the parties to work, their conduct during the marriage, their needs and abilities, fault, the amount of property awarded, and the general principles of equity," the trial court awarded plaintiff $1,900 per month in spousal support commencing in June of 2017.

## II. ANALYSIS

### A. SPOUSAL SUPPORT

Defendant first argues that the trial court erred in considering income defendant received from his marijuana grow operation when calculating spousal support. We disagree. We review a trial court's award of spousal support for an abuse of discretion. *Loutts v Loutts,* 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v*

---

[2] Defendant failed to file income tax returns in 2015 and 2016, and thus, there was no record of taxes that were or might have been paid.

*Shokoohi,* 288 Mich App 352, 355; 792 NW2d 63 (2010). Any findings of fact relating to the award are reviewed for clear error. *Id.* A finding of fact "is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id.* Deference is given to a trial court's findings of fact that are based on the credibility of witnesses. *Id.*

MCL 552.23(1) contemplates a case-by-case approach in determining an award of spousal support. *Loutts,* 298 Mich App at 29-30.[3] "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Id.* at 32. A court should consider all relevant factors in determining an appropriate award of spousal support, including:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington,* 288 Mich App at 356 (citation omitted).]

Rehabilitative spousal support is intended to allow a party to assimilate into the work force and establish economic self-sufficiency. See *Friend v Friend,* 486 Mich 1035; 783 NW2d 122 (2010). "Spousal support does not follow a strict formula." *Loutts,* 298 Mich App at 30.

Defendant asserts that he is unable to legally profit from the growth and sale of marijuana under the MMMA. In this regard, defendant appears to be correct. See MCL 333.26424(f) ("A registered primary caregiver may receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana."). Defendant contends that, because it would be illegal to profit from the sale or exchange of medical marijuana, it was unlawful for the trial court to award plaintiff spousal support on the basis of income that

---

[3] MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . ., the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

defendant may have obtained via such illegal activity. The essence of defendant's argument is that the trial court effectively required him to participate in illegal activities in order to meet his spousal support obligations. On this point, we disagree. The instant case does not involve a situation, as defendant argues, where the trial court has effectively ordered him to engage in unlawful activities. Indeed, the legality of defendant's annual earnings is entirely irrelevant.[4]

Defendant was not tried, here, for illegal marijuana sales or for any crimes at all. The trial court did not make specific findings of fact indicating that defendant was necessarily engaged in any criminal enterprise. Instead, the trial court merely attempted to reach an equitable result in consideration of the unique circumstances of this case. In so doing, the trial court fashioned a spousal support award designed to balance the entirety of the parties' incomes and needs in a just and reasonable manner. See *Loutts*, 298 Mich App at 32. The evidence presented showed that defendant received income far in excess of the earnings stemming from his drywall business. Defendant has cited no authority in support of the proposition that such income cannot be considered in spousal support calculations simply because it may have been acquired via unlawful means. If, in the future, defendant's income were to decrease such that he could no longer afford to meet spousal support payments—whether it be because he no longer receives income stemming from his marijuana grow operation or due to some other limiting factor—defendant would be entitled to request a modification of the spousal support award as justified by the extant facts and circumstances. See *Gates v Gates*, 256 Mich App 420, 434-435; 664 NW2d 231 (2003). In moving for such modification, defendant would bear the burden of proving new facts or a change in circumstances arising after the judgment of divorce. See *id*.

Defendant also challenges the trial court's findings of fact made in support of its spousal support calculation. Specifically, defendant argues that the trial court could not have determined that defendant was receiving any income from marijuana sales to his qualified patients because he repeatedly testified that he was not making any profit from such exchanges. Essentially, defendant argues that the trial court improperly ignored his testimony and weighed opposing evidence in plaintiff's favor. However, when pressed on the issue, defendant, himself, testified that he would sometimes receive funds in excess of what was necessary to recuperate the cost of maintaining his marijuana grow operation, and that he would keep the surplus income for personal use. Indeed, defendant acknowledged that he could not ensure that the money received from his qualified patients perfectly offset the cost of maintaining his marijuana grow operation in any given year. Defendant's frustration that the trial court weighed the evidence presented in

---

[4] Notably, under federal law, the government is entitled to funds stemming from the taxation of gross income earned from legal *and* illegal sources. *Solomon v Comm'r of Internal Revenue*, 732 F2d 1459, 1460 (CA 6, 1984), citing *Rutkin v United States*, 343 US 130, 138; 72 S Ct 571; 96 L Ed 833 (1952). This does not indicate that the federal government condones illegal activity, but ensures that criminals are not shielded from income tax simply because the sources of their incomes are unlawful. This case requires a similar holding. Defendant has failed to cite any authority suggesting that income obtained from illegal activities should be protected from spousal support calculations, which would effectively reward divorcing parties for engaging in criminal enterprises, merely because the income was obtained unlawfully.

a manner inconsistent with his own analysis is not a sound basis for asserting error. See *Loutts*, 298 Mich App at 32-33. And the trial court was free to find defendant's testimony lacking in credibility, to which assessment we defer. *Woodington,* 288 Mich App at 355. The trial court's findings of fact concerning the income defendant received from his drywall business, the income he received from his marijuana grow operation, the costs associated with maintaining the marijuana grow operation, and other unrelated expenses comported with the evidence presented. The trial court did not err in concluding that defendant's monthly income was sufficient to allow him to pay $1,900 per month to plaintiff in spousal support.

Defendant asserts that he would have incurred greater costs associated with maintaining his marijuana grow operation in 2015 because he was recovering from surgery. Defendant asserts in his appellate brief that this "likely would have been a year of higher costs for helpers to grow the medical marijuana." The bare assertion that costs *may* have been higher in 2015 was not supported by the evidence submitted to the trial court. No error resulted from the trial court's failure to consider evidence that was not before it.

Defendant also argues that the trial court's calculation of expenses stemming from the marijuana grow operation exceeded the deposits made into defendant's account in 2016. This is simply not true. Defendant's account statements revealed that defendant deposited $75,278.79 into his account in 2016. This plainly exceeded the $63,150 in annual expenses associated with maintaining the marijuana grow operation. Moreover, the trial court calculated that defendant was grossing $120,000 per year from providing marijuana to patients, not all of which, evidently, was deposited.

Defendant additionally contends that sales from his medical marijuana grow operation declined in 2017 such that he did not have funds to maintain spousal support. However, events that occurred after the trial court's initial determinations regarding spousal support do not establish an abuse of discretion necessary to reverse the trial court's order. If defendant remains unable to meet his support obligations, he is free to file a motion for modification of his spousal support obligations. At that time, defendant would bear the burden of proving new facts or a change in circumstances arising after the judgment of divorce. See *Gates*, 256 Mich App at 434-435.

For these reasons, the trial court's findings of fact did not constitute clear error, and its determination regarding spousal support did not fall outside the range of reasonable, principled outcomes, i.e., there was no abuse of discretion.

B. DIVISION OF MARITAL ASSETS

Defendant next contends that the trial court erred by considering defendant's marijuana plants or grow operation as marital property. The trial court determined that the grow operation had an equity value of $2,000, making the total value of the marital estate approximately $65,284. The court arrived at the $2,000 figure by finding that defendant had 17 mature marijuana plants that were valued by McNeil at $1,000 per plant, equaling $17,000 in total value, and then subtracting $15,000 in outstanding debt tied to the line of credit. The court awarded the marijuana grow operation to defendant.

With regard to the division of marital assets, this Court has stated:

> We consider the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, [we] must decide whether the dispositive ruling was fair and equitable in light of those facts. The trial court's dispositional ruling will be upheld, unless this Court is left with the firm conviction that the division was inequitable. [*Richards v Richards*, 310 Mich App 683, 693-694; 874 NW2d 704 (2015) (quotation marks and citations omitted; alteration in original).]

With some exceptions—none of which apply to this issue—property that is acquired or earned during the marriage is generally considered marital property. See *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010), citing MCL 552.19. Conversely, assets that are obtained or earned before the marriage are typically considered separate assets. *Id*. Once a trial court determines which assets are to be considered marital property, it may "apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Cunningham*, 289 Mich App at 201, citing *Byington v Byington*, 224 Mich App 103, 110, 112-113; 568 NW2d 141 (1997). Usually, marital assets are subject to division between the parties, while separate assets are not. *McNamara v Horner (On Remand)*, 255 Mich App 667, 670; 662 NW2d 436 (2003). An unequal distribution of the marital estate is not inherently inequitable, so long as an adequate explanation for the distribution is provided. *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009).

Defendant insists that the marijuana grow operation should not have been considered marital property. We disagree. In this case, defendant began the marijuana grow operation during the marriage, using funds earned during the marriage. Accordingly, the marijuana grow operation and any income received from sales of marijuana products that occurred during the marriage were appropriately deemed marital property. See *Cunningham*, 289 Mich App at 201. Moreover, defendant has made no showing that the division of the marital estate was inequitable in any way.

Renewing his earlier argument but in a slightly different context, we also reject, for the reasons discussed above, defendant's contention that the marijuana grow operation could have no value because ultimately profits are not allowed under the MMMA. Given defendant's history of sales producing a profit, along with McNeil's appraisal and the debt connected to the line of credit, the trial court did not err in valuing the marijuana grow operation.

Defendant lastly argues that if the medical marijuana operation did possess value greater than the costs associated with its maintenance, then the value of the plants was a form of income that would not be subject to division and distribution as part of the marital estate. Issues pertaining to the income that defendant earned after the judgment of divorce was issued would be more appropriately assessed under spousal support law, and not the rules governing the division of the marital estate. As previously discussed, the trial court did not abuse its discretion when it included income that defendant earned from marijuana sales in the calculation of spousal support. While it is true that assets earned after the judgment of divorce are no longer appropriately considered marital property, *McNamara*, 255 Mich App at 670, the trial court did not hold that income defendant would earn after the judgment of divorce derived from sales

associated with the 17 appraised marijuana plants was a marital asset to be divided between the parties. Instead, the court simply treated the marijuana grow operation or existing 17 marijuana plants as a present marital asset. And again, the trial court awarded the marijuana grow operation to defendant. Moreover, the trial court's inclusion of the $2,000 as marital property did not impact defendant to his detriment, where he does not even contend that the overall property division was inequitable. In sum, reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle