*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANIMESH AGARWAL,

       Plaintiff-Appellant,

v

SEEMA AGARWAL,

       Defendant-Appellee.

UNPUBLISHED
February 12, 2019

Nos. 340133; 340435; 340591
Oakland Circuit Court
Family Division
LC No. 2015-835011-DO

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the division of marital property between plaintiff and defendant within the judgment of divorce.[1] Plaintiff contends the trial court erred in distinguishing separate property from marital property, in choosing the date for the valuation of the assets, and the ultimate division of the assets. We affirm.

Plaintiff and defendant were married in India on January 30, 1990. They are the parents of two adult daughters.[2] The parties resided together at the marital home—located in Troy, Michigan—during their marriage until defendant left the home on February 23, 2013. Defendant took their youngest daughter with her. During the period of time after defendant left the marital home, plaintiff remained in the home, with defendant obtaining rental housing and then

---

[1] Plaintiff also appeals as of right the trial court's orders awarding attorney fees to defendant, but has acknowledged that he is not challenging that award. Having failed to raise an issue on appeal regarding the attorney fee award, we find that aspect of plaintiff's appeal to be abandoned. *In re Conservatorship of Brody*, 321 Mich App 332, 346; 909 NW2d 849 (2017).

[2] At the time of entry of the judgment of divorce, the daughters had both attained the age of majority, rendering custody and child support non-issues at trial. But when the parties separated in 2013, the younger daughter was 16 years of age, while their eldest daughter was an adult.

purchasing a condominium in October of 2015. Despite their physical separation and maintenance of separate residences beginning in February of 2013, plaintiff did not file a complaint for divorce until September 18, 2015. The trial court entered the judgment of divorce in May 2017.

On appeal, plaintiff raises several interrelated arguments. Plaintiff contends that the trial court's distribution of assets was inequitable because (1) it elected to use an allegedly arbitrary valuation date rather than the date of separation, (2) it unfairly distributed the parties' real property by awarding defendant an additional $40,000 in equity in the marital home, (3) it incorrectly determined that defendant's condominium was separate property, and (4) it unfairly divided numerous marital assets.

As this Court has explained:

> In a divorce action, we review for clear error a trial court's factual findings related to the division of marital property. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. We address questions of law de novo. [*Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010) (citations omitted).]

"[T]he proper time for valuation of an asset is within the discretion of the trial court." *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993). "If the trial court's findings of fact are upheld, we then must decide whether the dispositive ruling was fair and equitable in light of those facts. A dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *McNamara v Horner*, 249 Mich App 177, 183; 642 NW2d 385 (2002) (citations omitted). "We accord special deference to a trial court's factual findings that were based on witness credibility." *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). "The goal of the court when apportioning a marital estate is to reach an equitable division in light of all the circumstances. Each spouse need not receive a mathematically equal share, but significant departures from congruence must be explained clearly by the court." *Byington v Byington*, 224 Mich App 103, 114-115; 568 NW2d 141 (1997) (citations omitted).

This Court has explained the procedure and factors for consideration when distributing marital assets, ascertaining a date for valuation, and determining separate property:

> [A] trial court should equitably distribute marital property in light of all the circumstances. To reach an equitable division of marital property, a trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. The trial court must make specific findings regarding the factors it determines to be relevant.

Generally, marital assets are subject to division between the parties but the parties' separate assets may not be invaded. Generally, assets earned by a spouse during the marriage, whether they are received during the existence of the marriage or after the judgment of divorce, are properly considered part of the marital estate. The parties' manifestation of intent to lead separate lives, such as by filing a complaint for divorce or maintaining separate homes, can be of crucial significance when apportioning the marital estate. However, property earned after such a manifestation of intent should still be considered a marital asset, although the presumption of congruence that exists with respect to the distribution of marital assets becomes attenuated and may result in the nonacquiring spouse being entitled to no share or a lesser share of the property in light of all the apportionment factors. Separate assets may be invaded if one party demonstrates additional need, or had significantly contributed to the acquisition or growth of the separate asset.

A trial court must make specific findings of fact regarding the value of each disputed piece of marital property awarded to each party in the judgment. A trial court's findings of fact are inadequate if they are not sufficiently specific to enable the parties to determine the approximate values of their individual awards by consulting the verdict along with the valuations to which they stipulated. For the purposes of dividing property, marital assets are typically valued at the time of trial or the time judgment is entered, although a court may, in its discretion, use a different date. [*Woodington*, 288 Mich App at 363-365 (citations omitted).]

Plaintiff disputes the trial court's election to use the first date of the trial, June 2, 2016, as the valuation date for the assets. According to plaintiff, the parties separated in February 2013 and essentially led separate lives since then, so the trial court should have used February 23, 2013—the date that defendant left the marital home—as the date for valuation.

As already stated, "marital assets are typically valued at the time of trial or the time judgment is entered, although a court may, in its discretion, use a different date." *Id*. at 365. "[I]n determining the valuation date, the circuit court must and does retain considerable discretion to see that equity is done." *Byington*, 224 Mich App at 114 n 4.

Plaintiff's main complaint with the date of valuation is that he had assets that had gained significant value after the parties physically separated, and he believed that it is inequitable for defendant to benefit from any gains realized while the parties were living apart. The parties do not dispute that they began to establish separate physical living conditions in February 2013. But it is also beyond dispute that they did not fully effectuate the severance of their assets after their separation and before trial. As discussed by this Court:

When determining property rights, the court may apportion all property that has "come to either party by reason of the marriage. . . ." The property that is subject to apportionment is referred to as "marital property," and it is this property that comprises the marital estate. Assets earned by a spouse during the marriage are properly considered part of the marital estate. [*Id*. at 110 (citations omitted).]

Thus, the various accounts and assets that plaintiff contends were acquired after the parties' physical separation but developed before the judgment of divorce "[are] marital property and [are] properly considered part of the marital estate." *Id.*

It has been routinely recognized that "when apportioning the marital estate incident to a divorce, the court must strive for 'an equitable division of any increase in net worth that may have occurred between the beginning and the end of the marriage.'" *Id.* at 113 (citation omitted). And, again, "[w]hen dividing the estate, the court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health, and needs, fault or past misconduct, and any other equitable circumstance. The significance of each of these factors will vary from case to case, and each factor need not be given equal weight where the circumstances dictate otherwise." *Id.* at 115 (citations omitted). While "a public manifestation of intent to lead separate lives has relevance," it must still be weighed in the context of the "contribution of each party to the marital estate." *Id.*

Here, the parties were married a significant number of years. Both contributed financially to their family's maintenance and acquisition of assets throughout the marriage. Each also provided services to their family, although the trial court found defendant's contributions to be significant and exclusive at various periods during the marriage. While plaintiff contends that his acquisition of monies after the separation was completely independent of defendant, he is mistaken. Plaintiff was able to make such significant financial contributions to his various accounts because defendant assisted throughout the marriage in paying off the encumbrances on the marital home, which plaintiff continued to live in during their period of separation. In contrast, defendant was required to expend earnings for housing and to support their youngest daughter, without contribution from plaintiff. To permit plaintiff to benefit from the windfall, created in part from defendant's marital contributions, would be inequitable. Thus, given the overall circumstances of this case, and with due consideration given to the history of the parties in contribution to their estate and assets, it was not an abuse of discretion for the trial court to select the later date for valuation of the assets in order to place the parties in "relative parity." *Id.* at 116.

Addressing the distribution of real property, the trial court split the equity value of the marital home between the parties, with an additional $40,000 awarded to defendant premised on the attribution of fault to plaintiff for the breakdown of the marital relationship and the trial court's factual determination that defendant's contributions were particularly significant, providing the exclusive financial and caretaking functions for the family during a lengthy period of time. Plaintiff does not dispute an equal split or the division of the marital home equity, but does challenge the award of an additional $40,000 to defendant. Clearly, the marital home was a joint asset having been obtained early in the marriage, with both parties contributing to the removal of all financial encumbrances to the property, other than the routine expenses of taxes, insurance, and utilities. While plaintiff sought reimbursement for *de minimis* repairs he effectuated to the marital home during the separation, the trial court properly denied this request based on the benefit received by plaintiff for having a rent-free residence. Further, given the property was in his possession, it seems equitable that he should be accountable for repairs and maintenance required that were relatively insignificant financially.

With reference to the additional $40,000 awarded in equity from this asset, it is notable that a trial court is authorized "to consider a party's fault in causing the breakdown of the marital relationship as a factor . . . in dividing the marital estate." *Berger v Berger*, 277 Mich App 700, 721; 747 NW2d 336 (2008). However, courts have been cautioned against an award that results in a "huge divergence from congruence," or the attribution of overly significant weight to any particular factor in the distribution of assets. *Id*. Punishment is not an acceptable objective as "a judge's role is to achieve equity, not to 'punish' one of the parties." *Id*. at 722 (quotation marks and citation omitted).

Here, the trial court's attribution of fault served as justification for it to vary from the award of a simple equalization in the distribution of the asset, but was not set forth for purposes of punishment.[3] Rather, the trial court explicitly indicated that the additional award to defendant was in recognition of her significant contributions both during the marriage and after the parties' separation, citing specifically the period of time when plaintiff attempted to unsuccessfully engage in day trading, leaving the financial burden of the family solely to defendant. The trial court also noted that after the separation, defendant assumed all financial responsibility for the youngest child without any contribution by plaintiff. Thus, the trial court's award is not construed to be inequitable or the imposition of an improper punishment to plaintiff.

Plaintiff also challenges the trial court's determination that defendant's condominium constituted separate property and that plaintiff was not entitled to any division of the condominium's equity. It was undisputed that the parties separated in February 2013, the complaint for divorce was not filed until September 2015, and defendant's purchase of the condominium effectuated in October 2015. Monies for the down payment on the condominium were gifted to defendant, and plaintiff acknowledged that he made no financial or other contribution to the acquisition of the condominium.

"[T]he trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets." *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). "Marital assets are those that came 'to either party by reason of the

---

[3] Plaintiff contests the trial court's finding that plaintiff was at fault for the dissolution of the marriage because, according to plaintiff, there was no evidence of fault. Yet plaintiff ignores that the trial court acknowledged that there was "no direct evidence of an extramarital affair." Rather, the trial court considered the testimony about plaintiff's relationship with his "tennis club friend" and how that relationship contributed "to the parties' martial discontent and eventual separation." For instance, defendant testified that she was concerned about a potential relationship that plaintiff may have been having with his "tennis club friend," but when she confronted plaintiff about it, he refused to deny that he had "any feeling[s] for" his tennis club friend. Relatedly, the trial court based its determination of fault on its finding that "Plaintiff refused to participate in . . . efforts to salvage the marriage." Giving deference to the trial court's credibility determinations—as we are unpersuaded by plaintiff's arguments that we should not give deference to those determinations—we conclude that the trial court's finding that plaintiff was at fault for the dissolution of the marriage was not improper.

marriage. . . .' " *Woodington*, 288 Mich App at 358, quoting MCL 552.19. "Generally, marital assets are subject to division between the parties, but the parties' separate assets may not be invaded." *McNamara*, 249 Mich App at 183. "Normally, property received by a married party . . . but kept separate from marital property, is deemed to be separate property not subject to distribution." *Dart v Dart*, 460 Mich 573, 585; 597 NW2d 82 (1999).

Here, it does not appear that the condominium came to defendant " 'by reason of the marriage. . . .' " *Woodington*, 288 Mich App at 358, quoting MCL 552.19. After defendant left the marital home, she obtained rental housing, while plaintiff lived rent-free at the paid-off marital home. Defendant only purchased the condominium after monies for the down payment were gifted to her. There is no evidence that plaintiff ever visited or otherwise contributed to the acquisition of the condominium; it was always defendant's separate home, acquired by defendant using non-marital funds after the parties had been physically separated for over two years. On this record, we are not definitely and firmly convinced that the trial court made a mistake by concluding that defendant's condominium was her separate property.[4]

Plaintiff next challenges the trial court's division of numerous items of marital property. First, while plaintiff does not specifically challenge the trial court's award of each party their separate vehicle, he implies that the debt for his vehicle should be taken into consideration when formulating the award. Contrary to plaintiff's implication, having been awarded the asset, it is not atypical for the debt associated with the asset to also be awarded to the individual receiving possession. Since the asset was identified historically as plaintiff's transportation and will be in the sole possession and control of plaintiff, it is only reasonable that he maintain the debt associated with the vehicle. Plaintiff also sought contribution to his student loan debt, denying defendant had ever contributed to its payment. There are multiple problems with plaintiff's position. Defendant's contribution to plaintiff's attainment of an advanced degree is not limited to financial contributions made directly for the loan. Defendant worked throughout the term of the marriage, except for periods of unemployment, in which she contributed to the household both financially and as a caretaker, thus contributing to the advancement of plaintiff's education. In addition, plaintiff paid off the student loan debt of $39,000 before the divorce trial with monies that would have been subject to distribution as part of the marital estate. Thus, defendant has contributed to those expenses, and plaintiff has no basis for complaint.

Similarly, although plaintiff disputes the award of personal items from the marital home, it cannot be reasonably asserted that defendant's procurement of her items of clothing from the home is inequitable. Further, while plaintiff contends that the parties divided the personal property and furnishings from the marital home at the time of their separation, his assertion is belied by defendant's testimony that she did not view the estrangement as permanent. The award to defendant of a buffet, hutch, and fine china from the marital home, with plaintiff retaining the remainder of the furnishings, cannot be construed as inequitable given the acquisition of the items over 26 years of marriage.

---

[4] Plaintiff does not argue that his situation falls under either of the two statutory exceptions that permit invading defendant's separate property. See MCL 552.23 and MCL 552.401.

Plaintiff also contests the trial court's refusal to distribute, as marital property, any funds remaining in the Michigan Education Savings Plan (MESP) account[5] and the Michigan Uniform Transfers to Minors Act (MUTMA)[6] accounts that were in the names of the parties' adult children as beneficiaries.

MUTMA[7] and MESP[8] accounts are established for the benefit of an identified individual, so the accounts are construed as owned by that individual, and the trial court was precluded from awarding the accounts to either of the parties. See *Gates v Gates*, 256 Mich App 420, 428; 664 NW2d 231 (2003) ("Michigan divorce statutes do not permit the courts to order conveyance of property or interests in property to third parties."). Discrepancies in the parties' respective testimony pertaining to the ownership of the accounts, deposits and withdrawals thereto, and their use were determined in favor of defendant based on the trial court's attribution of credibility. "An appellate court recognizes . . . the judge's unique opportunity to observe the witnesses, as well as the factfinder's responsibility to determine the credibility and weight of trial testimony." *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). In short, the trial court's decision that it lacked jurisdiction to award any of these accounts to either party was consistent with the law and the status of the adult children as the beneficiaries of the accounts. Plaintiff's suggestion that he should be reimbursed monies gifted to his children through these accounts, and for which tax benefits were already realized, is without merit.

Plaintiff also challenges the distribution of gold coins and jewelry acquired during the marriage. First, the parties agreed that 12 gold coins, of equal value, were purchased during the marriage. Defendant acknowledged being in possession of six of the coins and was unaware of the location of the remainder. Awarding defendant half of this asset—meaning the coins in her possession—was not inequitable given their purchase during the marriage and plaintiff's award of the remaining coins. Second, plaintiff does not appear to dispute the award of jewelry gifted to defendant during the marriage as her sole property, but does assert that the gold jewelry gifted at their wedding is a marital asset intended to benefit both parties based on Indian custom. In contrast to plaintiff's position, it was noted that the vast majority of this jewelry is designed for a female's use or ornamentation and was handed to defendant at the wedding. Also, defendant

---

[5] Plaintiff acknowledged transferring the balance of this account into a similar form of account that was now part of his Fidelity portfolio.

[6] MCL 554.521 *et seq*.

[7] "A person may make a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor[.]" MCL 554.528. Further, in accordance with MCL 554.536(2), "the custodial property is indefeasibly vested in the minor, but the custodian has the rights, powers, duties, and authority provided in this act, and neither the minor nor the minor's legal representative has any right, power, duty, or authority with respect to the custodial property except as provided in this act."

[8] Contributions to MESP accounts are construed as gifts for relevant tax purposes. Petrosky, *The Michigan Education Savings Plan*, 80 Mich B J 37, 40 (June 2001).

testified that the actual custom is to give the jewelry to the wife at the wedding, that she had worn the various items at different times throughout the marriage, and that the intent is to treat the items as heirlooms to be given to the parties' daughters at an appropriate time, like their weddings or other significant life events. The trial court elected to distribute these items by awarding the "female" jewelry to defendant and the items designated as "male" jewelry to plaintiff, finding defendant's testimony more credible. The trial court was particularly persuaded to credit defendant's testimony on this point because plaintiff appeared to contradict himself; he testified that, at the eldest daughter's recent wedding, he gifted their daughter, not the son-in-law, with jewelry. Based on the trial court's credibility determinations and the evidence elicited at trial, the distribution of the jewelry is not construed as inequitable. See *Mogle v Scriver*, 241 Mich App 192, 201; 614 NW2d 696 (2000) ("When reviewing the trial court's findings of fact, this Court defers to the trial court on issues of credibility.").

As for the India bank accounts, plaintiff acknowledged that the Vijaya accounts comprised marital property. It is routinely recognized that a party cannot assert error on appeal for something that he or she contributed to through plan or by negligence. *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). Plaintiff also acknowledged that a vehicle gifted to them at their wedding was sold and the monies realized were deposited into one of the accounts.

While plaintiff asserts the State Bank of India was an account opened by his parents for plaintiff and his brother and maintained without marital contribution, defendant disputed this contention. According to defendant, the parties had made a deposit into the account, thus resulting in a comingling of assets. Based on the trial court's determination of credibility in favor of defendant, and the minimal value of the asset, it cannot be construed as error for the trial court to have treated this account as a marital asset subject to distribution to both parties.

Two of the UTI mutual fund accounts in India were held jointly by the parties, with the third account in plaintiff's name. Defendant explained that the accounts were maintained for the convenience of the parties when traveling to India to provide access to funds and preclude the need to carry cash on their travels. Again, the value of the accounts, in the context of the parties' total assets, was relatively minimal. Defendant acknowledged using the accounts for travel expenses and gift purchases when in India while the parties were married, consistent with their intended purpose. Thus, based on the trial court's credibility determinations, the treatment of the accounts as marital assets subject to distribution did not comprise error. Notably, defendant asserted the existence of an account, pre-marriage, with the Punjabi National Bank, which cannot now be located or traced. This account was also included, by reference and implication, by the trial court for treatment as a marital asset subject to equal distribution between the parties, further demonstrating the equitable nature of the trial court's treatment of the India accounts.

Finally, the bulk of the parties' assets was comprised of innumerable bank, investment, and retirement accounts, which were identified as marital assets and to be valued and distributed equally pursuant to the trial court's determinations. Plaintiff asserted that defendant, in anticipation of their separation, removed monies from the accounts for her personal benefit and that, in particular, his retirement account established after their separation should be construed as his sole property.

Many of the accounts were available to both parties, with each contributing and withdrawing funds during this long-term marriage. It cannot be reasonably asserted that the funds remaining did not comprise marital assets. Any monies moved by defendant to separate accounts is irrelevant given the trial court's decision that all accounts, owned by either party at the time of the divorce trial be included in the distribution as marital assets.

As noted earlier within the discussion regarding the proper valuation date for the assets, plaintiff's suggestion that his retirement accounts established and grown during the term of the parties' separation should be construed as his separate asset is without merit. Both parties indisputably contributed throughout the marriage to the acquisition of various assets, including the marital home. Plaintiff's ability during the separation to significantly contribute to his newly established retirement account is due, in part, to his retaining the marital home during the separation and the absence of any mortgage or other encumbrance on the property, allowing him to live relatively rent-free for an extended time period. Testimony evidenced that even the taxes and insurance were paid in advance, thus providing plaintiff with an additional opportunity to save funds he was not required to expend for his daily living costs. This opportunity was funded by defendant's contributions throughout the marriage. In addition, defendant assumed all financial responsibility for the parties' youngest daughter, who was a minor at the time of separation, without any financial contribution by plaintiff, further affording him an increase in discretionary funds.

"[A]ssets a spouse earns during the marriage are properly considered part of the marital estate, and thus subject to equitable division." *Reed v Reed*, 265 Mich App 131, 152; 693 NW2d 825 (2005). Typically, separate property is identified as "[p]roperty that a spouse owned before marriage or acquired during marriage by inheritance or by gift from a third party, and in some states property acquired during marriage but after the spouses have entered into a separation agreement and have begun living apart or after one spouse has commenced a divorce action." *Black's Law Dictionary* (10th ed). Having distinguished between marital and separate property, the goal for the trial court is to construct an equitable distribution of the identified assets. The factors considered include, but are not limited to:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*McDougal v McDougal*, 451 Mich 80, 89; 545 NW2d 357 (1996).]

This was appropriately recognized as a long-term marriage of 26 years' duration. Both parties contributed to the marital estate financially and through the provision of services. The parties are fairly equivalent in age and their life status, with no indication of any significant health concerns. Both are gainfully employed, educated, and earning substantial income individually. The trial court determined that the breakdown of the marriage relationship was, in a substantial degree, attributable to plaintiff's behavior. Further, while not specifically citing "principles of equity," the trial court emphasized that defendant was the sole financial provider and caretaker for periods of time during the marriage and continued to maintain that role during the parties' separation for the youngest daughter. Plaintiff's ability to increase his wealth during the parties' separation was due in part to contributions made by defendant throughout the

marriage—like the payoff of all major encumbrances on the marital home, which allowed plaintiff to live effectively rent-free for an extended time period—and defendant's sole support of the youngest daughter without any contribution from plaintiff. Given the history of this marriage as recounted by the parties during trial, the trial court's findings on credibility, and the general factual circumstances, the trial court's election to split the remaining bank, investment, and retirement accounts between the parties cannot be construed as inequitable or to have ignored or mischaracterized separate property as comprising marital assets.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien