*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MARY ELIZABETH ZELASKO,

          Plaintiff-Appellee,

v

RICHARD ANTHONY ZELASKO,

          Defendant-Appellant.

UNPUBLISHED
June 13, 2019

No. 342854
Oakland Circuit Court
Family Division
LC No. 2011-788549-DM

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's entry of a judgment of divorce following arbitration. On appeal, defendant challenges the trial court's denial of his motion to vacate the arbitration award as being inconsistent with Michigan law. We affirm.

## I. *ZELASKO I*

This is the second time this case has been before this Court. The first time resulted in an unpublished opinion, *Zelasko v Zelasko*, unpublished per curiam opinion of the Court of Appeals, issued December 8, 2015 (Docket No. 324514) (*Zelasko I*). *Zelasko I* set out the relevant factual and procedural history of this case, and we replicate it here:

> The parties were married on October 23, 2004. The parties had three minor children. Plaintiff worked as a sales associate earning between $100,000 and $120,000 annually. Defendant owned his own businesses and earned approximately $36,000 annually. Plaintiff filed a complaint for divorce in September 2011 and defendant filed a counter-complaint for divorce in October 2011. The parties entered into an arbitration agreement under the DRAA [domestic relations arbitration act, MCL 600.5070 *et seq*.] and agreed to appoint John F. Mills as arbitrator "to decide all contested issues . . . [.]" During the course of the proceeding, the arbitrator issued several interim awards. The first and second interim awards pertained to issues involving holiday parenting time and summer day camp expenses.

On July 5, 2013, defendant won the $80 million Mega Millions jackpot. After taxes and deductions, defendant's winnings amounted to $38,873,628. In an interim award dated November 22, 2013, the arbitrator decided the issue of property division. The arbitrator determined that defendant's lottery winnings were part of the marital estate. The arbitrator opined that that was probably not the first lottery ticket that defendant purchased during the marriage and that, "[a]s losses throughout the marriage were incurred jointly, so should winnings be shared jointly." The arbitrator also noted, "[d]espite winning the lottery, [defendant] has not contributed any money to Plaintiff for the support of his three children." The arbitrator awarded plaintiff $15 million of the lottery winnings. The arbitrator also divided the remainder of the marital estate. The lottery winnings were by far the biggest asset. The arbitrator determined that neither party needed spousal support and deferred the issues of child support and parenting time.

Plaintiff filed a motion to confirm the arbitrator's award, and defendant filed a motion to vacate the award. The trial court denied defendant's motion, granted plaintiff's motion, and entered an order confirming the award. The court rejected defendant's argument that the arbitrator was biased against him, which the court noted defendant raised for the first time after the arbitrator's fifth interim award[, i.e., the November 22, 2013 award addressing the issue of property division].

On February 12, 2014, the arbitrator awarded plaintiff interim child support in the amount of $7,167 per month based on the Michigan Child Support Formula. Plaintiff filed a motion to confirm the arbitrator's seventh award and defendant filed a motion to vacate the award. The trial court granted plaintiff's motion and denied defendant's motion. The court again rejected defendant's claim of bias and noted that plaintiff had not yet had access to any of the lottery proceeds and had not received any child support.

On June 11, 2014, the arbitrator held a supplemental evidentiary hearing regarding parenting time, custody, and child support. At the end of the hearing, arbitrator Mills indicated that he would issue an award by July. He indicated that his award would incorporate all of the interim awards, but that he would not restate all of the interim awards. On July 26, 2014, the arbitrator died without having issued the final award. [*Id*. at 1-2 (some alteration in original).]

After the parties' agreed-upon arbitrator died, the trial court appointed a substitute arbitrator over defendant's objection and denied defendant's request that all of the former arbitrator's interim orders be vacated. This Court granted defendant's application for leave to appeal and reversed the portion of the trial court's order that appointed a substitute arbitrator, but agreed with the trial court that there was no reason to disturb the previous interim arbitration orders. *Id*. at 5-7. The case was remanded back to the trial court, after which the trial court entered a consent judgment of divorce. Defendant now appeals the judgment of divorce as of right.

## II. LOTTERY WINNINGS

Defendant first argues that the arbitrator exceeded his authority and violated Michigan law when he awarded plaintiff half of his lottery winnings. Defendant specifically asserts that he purchased the lottery ticket five years after the parties separated and after the arbitration hearing was complete. Defendant contends that the arbitrator was aware of *Byington v Byington*, 224 Mich App 103; 568 NW2d 141 (1997), yet misapplied its holding resulting in a legal error on the face of the arbitration award. Plaintiff argues that the arbitrator did not exceed his authority because he properly applied the holding of *Byington* with regard to property distribution and, therefore, there is no basis to void the arbitration award.

This Court reviews a trial court's ruling on a motion to vacate or modify an arbitration award de novo. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). Likewise, "[w]hether an arbitrator exceeded his or her authority is also reviewed de novo." *Id*. at 672. "Judicial review of arbitration awards is . . . extremely limited[.]" *Id*. at 671.

> A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself. By "on its face" we mean that only a legal error that is evident without scrutiny of intermediate mental indicia will suffice to overturn an arbitration award. Courts will not engage in a review of an arbitrator's mental path leading to [the] award. Finally, in order to vacate an arbitration award, any error of law must be so substantial that, but for the error, the award would have been substantially different. [*Id*. at 672 (quotation marks and citations omitted; alteration in original).]

In order to promote informal dispute resolution, the Legislature limited a court's authority to vacate or amend an arbitrator's award after binding arbitration. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991) (recognizing that courts have a limited power to modify, correct, or vacate an arbitration award and stating that the limits serve to preserve the efficiency and reliability of arbitration). The court may normally only vacate an arbitrator's award if the "award was procured by corruption, fraud, or undue means"; if there was "evident partiality," "corruption," or "misconduct prejudicing a party's rights"; if the "arbitrator exceeded his or her powers"; or if the "arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights." MCL 600.5081(2)(a) through (d).

Applying *Byington*, the arbitrator determined that defendant's lottery winnings were part of the marital estate, observing that "marital property includes all property acquired from the date of marriage until the date of entry of the divorce decree. Property that is acquired between separation and actual divorce is marital property." After determining that the lottery winnings were "includable in the marital estate," the arbitrator recognized that he should apply the factors enunciated in *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992), with regard to property division to "make a decision that [was] fair and equitable under all of the circumstances." The arbitrator opined that the winning lottery ticket was probably not the first lottery ticket that defendant purchased during the marriage and that, "[a]s losses throughout the marriage were incurred jointly, so should winnings be shared jointly." The arbitrator stated, "It's true that

Defendant spent $1.00 to purchase the winning lottery ticket, however the dollar spent was arguably marital money and, as such, a joint investment." The arbitrator also noted that "[d]espite winning the lottery, [defendant] has not contributed any money to Plaintiff for the support of his three children." The arbitrator awarded plaintiff $15 million of the lottery winnings and the remainder to defendant. The arbitrator also divided the remainder of the marital estate.

Generally, property that is acquired or earned during the marriage is considered marital property. *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). Once a court determines which assets are to be considered marital property, it may "apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Id*. at 201, citing *Byington*, 224 Mich App at 110, 112-113. Usually, marital assets are subject to division between the parties, while separate assets are not. *McNamara v Horner (After Remand)*, 255 Mich App 667, 670; 662 NW2d 436 (2003). "The goal of the court when apportioning a marital estate is to reach an equitable division in light of all the circumstances." *Byington*, 224 Mich App at 114. An equitable division is not always an equal one, and the trial court has broad discretion to determine what is equitable under the circumstances. *Sparks*, 440 Mich at 158-159.

As the arbitrator correctly observed, the following factors from *Sparks* should be considered in apportioning marital assets in a divorce:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id*. at 159-160.]

The court may also consider any other relevant factors, which will necessarily vary depending on the circumstances of the case. *Id*. at 160. In *Byington*, 224 Mich App at 115, this Court explained that a "public manifestation of intent to lead separate lives" may be relevant to weighing these factors when one party acquires marital property after such a separation. Thus, the Court recognized "the possibility that appropriate weighing of the *Sparks* factors may in some cases result in a determination that the nonacquiring party is entitled to no portion of property acquired after a manifestation of intent to lead separate lives because of the difference in the parties' contributions to acquisition of such property." *Id*. at 115-116. Nonetheless, consideration of other relevant factors may lead to a contrary result, requiring "some apportionment of such property up to and including an equal apportionment." *Id*. at 116. As already noted, the ultimate goal of apportioning the marital estate is to reach "an equitable division in light of all the circumstances." *Id*. at 114.

Defendant insists that the lottery winnings should not have been considered marital property because he purchased the winning ticket long after the parties separated and even after the parties' arbitration hearing. Importantly, we may not review the arbitrator's findings of fact and are extremely limited in reviewing alleged errors of law. *Washington*, 283 Mich App at 672. Moreover, "[o]nce we are satisfied that the arbitrator has applied the controlling law, our review is complete absent some error appearing on the face of the award." *Id*. at 674. Here, no such error exists. With regard to inclusion of the lottery winnings in the marital estate and the

division of property, defendant has made no showing on this record that: (1) the arbitrator failed to apply controlling law to the question of whether the lottery winnings were includable in the marital estate, or (2) the arbitrator's division of the marital estate was inequitable in any way. In other words, defendant has not demonstrated error appearing on the face of the arbitration award. Therefore, our review is complete and we will not disturb the arbitrator's determination that the lottery winnings were includable in the marital estate or the manner in which he divided the marital estate. *Id*.

## III. SIXTY-DAY PERIOD

Defendant argues that the arbitrator exceeded his authority by issuing an arbitration award long after expiration of the 60-day period provided for both in the parties' arbitration agreement and MCL 600.5078(1). Defendant specifically contends that but for a protracted delay caused by the arbitrator's illness, the lottery proceeds from defendant's winning ticket would have been acquired postdivorce and would have been outside the marital estate. Plaintiff argues that the arbitrator did not exceed his authority and the trial court properly denied defendant's motion to vacate the fifth interim award concerning property division. Plaintiff asserts that defendant both consented to and cooperated in the arbitration process and had not previously objected to the timing of the other interim orders.

MCL 600.5078(1) states,

> Unless otherwise agreed by the parties and arbitrator in writing or on the record, the arbitrator shall issue the written award on each issue within 60 days after either the end of the hearing or, if requested by the arbitrator, after receipt of proposed findings of fact and conclusions of law.

Defendant raised this issue in the trial court in his motion to vacate the arbitration award. The trial court analyzed the issue and did not find error. The trial court concluded that, although the arbitrator did not issue his award within 60 days, no error occurred because defendant never objected to the timeliness of the interim arbitration awards and in fact affirmatively consented to the arbitrator deciding the issue of the lottery winnings by his words and actions on the record. The trial court explained:

> Defendant takes great exception to the fact that the arbitrator did not issue his award within 60 days of conclusion of the hearing in December and contends that by doing so, he exceeded his authority under the law. He contends that because there is not a final award and there have been now a total of seven interim awards, the arbitrator has exceeded his authority and the award should be vacated. Both the arbitration agreement and MCL 600.5078 require the award to be issued within 60 days after the end of the hearing. Although the award clearly was not issued within this time frame, this alone does not mandate that the award should be vacated.[1]

---

[1] See *Bolhuis Lumber v Brower*, 252 Mich 562, 233 NW 415 (1930) and *Patrick v Batten*, 123 Mich 203, 207; 81 NW 1081 (1900), which states [sic]: "The parties

in this case did not provide that the award should be void if it was not made at the time appointed. The failure to file the award within the time fixed is not one of the reasons provided for by the statute for vacating it."

---

This court finds it highly probative that Defendant never filed any previous motions to vacate, despite the fact that those interim awards were issued past the 60 days. Defendant did not object to the timing of these previous awards and during oral argument admitted that no pleadings or objections were ever filed with this court or the arbitrator regarding the timeliness of the awards. Counsel for Defendant could only say that at the conclusion of the December 2012 hearing, "it was clear to the arbitrator we were anxious to get this over with." In response to Defendant's Response to Plaintiff's Motion to Confirm Award filed July 25, 2013, Defendant does not at all object to the timeliness of the Second Interim Award.

Plaintiff filed a Motion for an Ex Parte Restraining Order on September 11, 2013 to freeze the lottery winnings. Defendant's Response states, "Although the arbitrator clearly has jurisdiction over the lottery winnings . . . ." . . . The Response further states, ". . . it is the *arbitrator* who must first determine whether to grant a restraining order and, if granted, how much of the lottery proceeds will be subject to that order. The court's only proper role is to enforce the arbitrator's decision if either party seeks enforcement by the court." . . . The Defendant then asks the court to refer the restraining order back to the arbitrator for his award. The parties then agreed to have Mr. Mills decide the issue of the lottery proceeds, and the Fifth Interim Award was the result.

Defendant filed this Response stating that the arbitrator had jurisdiction over the winnings nearly *10 months* after the conclusion of the hearing and approximately 7 months after the "60 day" deadline for which he now seeks to enforce. He in no way objected to the timeliness of any award and actually asked this court to refer it back to the arbitrator.

Due to the fact that Defendant never objected to the timeliness of the awards and in fact, actually argued that the arbitrator rightfully should litigate the lottery proceeds 10 months after the hearing, this court finds that the parties consented by their actions to waive the 60 day deadline imposed by statute and the agreement.

As such, the arbitrator did not exceed his authority by failing to issue a final award in the 60 day time period. Thus, Defendant's Motion to Vacate Fifth Interim Award is DENIED and Plaintiff's Motion to Confirm Arbitration Award is GRANTED.

After careful review of the record, we agree with the trial court's thorough analysis of the issue. It should be noted that this was not just a "run of the mill" contentious divorce

proceeding. Already tense litigation was complicated by unusual circumstances when defendant won the lottery during the proceedings and the arbitrator suffered from cancer, eventually passing away. Both parties took part in the complex arbitration and the record is plain that defendant consented by his words and actions to waive the 60-day deadline. Defendant failed to object before the arbitrator or the trial court based on the timeliness of any of the arbitrator's interim awards. Defendant also affirmatively argued that the arbitrator should litigate the division of the lottery proceeds a full 10 months after the hearing. The concept of waiver is well-established in Michigan jurisprudence, reflecting "the intentional abandonment of a known right" that "extinguishes any error." *LME v ARS*, 261 Mich App 273, 277; 680 NW2d 902 (2004). "A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) (quotation marks and citation omitted). Under these circumstances, defendant effectively waived any error arising from the delay in the arbitrator's awards. *Id*.

## IV. ARBITRATOR'S BIAS

Defendant argues that the arbitrator demonstrated bias against him and favored plaintiff during the arbitration proceedings. As a result, defendant argues that the arbitrator's fifth interim award, and all other awards, should be vacated. Plaintiff responds that defendant's claim of bias must fail because the parties are bound by the law of the case.

To vacate an arbitration award on the basis of partiality, the partiality or bias "must be certain and direct, not remote, uncertain or speculative." *Bayati v Bayati*, 264 Mich App 595, 601; 691 NW2d 812 (2004) (quotation marks and citation omitted). In other words, the bias or prejudice must be concrete. *Id*. "Whether the law of the case doctrine applies is a question of law that we review de novo." *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013).

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). "Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case." *Id*. "The law of the case may be viewed as shorthand for the holding of a prior decision between the same parties which is applied by a lower court upon remand or an appellate court upon subsequent review." *Topps-Toeller, Inc v Lansing*, 47 Mich App 720, 727; 209 NW2d 843 (1973). "[L]aw of the case offers the same parties a measure of certainty by according finality to the litigated issues until the cause of action is fully litigated, including retrials or appeals, and the superseding doctrines of res judicata and collateral estoppel become effective." *Id*. at 729. The doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

In *Zelasko I*, when analyzing the DRAA and disqualification, this Court affirmed the trial court's holding that this case did not involve an arbitrator that was biased, but one that was unavailable because he had died. This Court held:

Finding that the trial court was without authority to appoint a substitute arbitrator, we now must determine the proper course of action going forward. There is no provision in the DRAA that deals with the death of an arbitrator. Defendant compares the current situation to MCL 600.5075 of the DRAA, which deals with disqualification. Pursuant to MCL 600.5075:

> (1) An arbitrator, attorney, or party in an arbitration proceeding under this chapter shall disclose any circumstance that may affect an arbitrator's impartiality, including, but not limited to, bias, a financial or personal interest in the outcome of the arbitration, or a past or present business or professional relationship with a party or attorney. Upon disclosure of such a circumstance, a party may request disqualification of the arbitrator and shall make that request as soon as practicable after the disclosure. If the arbitrator does not withdraw within 14 days after a request for disqualification, the party may file a motion for disqualification with the circuit court.

> (2) The circuit court shall hear a motion under subsection (1) within 21 days after the motion is filed. If the court finds that the arbitrator is disqualified, the court may appoint another arbitrator agreed to by the parties or may void the arbitration agreement and proceed as if arbitration had not been ordered.

Defendant maintains that "death is the ultimate disqualification." . . . We find such a comparison flawed. In a situation where an arbitrator has been found to be biased or partial, the validity of the entire proceeding becomes an issue and it makes sense to have a "do over." But here, there has never been a finding that Mills was biased or that the proceedings were unfair. The parties' arbitration contract portion regarding the children – and only that portion - was legally impossible to complete, not because Mills was biased, but because Mills became unavailable. [*Zelasko I*, unpub op at 5-6.]

Accordingly, because this Court decided as part of its analysis that Mills was not biased, this Court is not free to decide this issue differently on subsequent appeal. *Ashker*, 245 Mich at 13. We conclude that this issue is barred by the law of the case doctrine.

## V. DEATH OF THE ARBITRATOR

Finally, defendant argues that because the arbitrator died before completing the arbitration, the trial court was required to void the arbitration agreement, void all of the previous interim awards issued by the arbitrator (including the fifth interim award concerning the lottery winnings), and proceed as if arbitration had not been ordered. Plaintiff again argues that this issue is barred by the law of the case doctrine.

In *Zelasko I*, this Court held that the arbitrator's interim awards should stand:

Given our conclusion that MCL 600.5075 has no application, we are not bound by the statute's requirement that, in the absence of an agreement for a new arbitrator, the matter "proceed as if arbitration had not been ordered." Instead, Mills' interim orders that have already been completed and confirmed are distinct and divisible. The fact that he was rendered unable to decide *all* the issues does not impugn the issues already decided. Defendant concedes as much on appeal when he writes: "As each key interim award was issued by Mills, [defendant] filed timely requests to correct errors and omissions and [plaintiff] filed motions with the trial court to confirm the awards. Ultimately, orders were entered confirming Mills' interim awards over Rich's objections." At the last hearing before him, Mills indicated that he intended that the final arbitration award would incorporate the interim awards without restating them and that the only issues remaining were parenting time and support modification. Thus, while not *all* of the issues were decided, those that were decided should stand. The matters at issue in the seven interim awards have been decided, and the only remaining issues pertain to child custody, support, and parenting time. Thus, the arbitrator rendered decisions on issues involved in this dispute before his death. [*Zelasko I*, unpub op at 6; alterations in original.]

Accordingly, because this Court explicitly decided this exact question of law in its prior opinion, we are not free to decide it differently on subsequent appeal. *Ashker*, 245 Mich at 13. We conclude that this issue is barred by the law of the case doctrine.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica